1

2

3

4

5

6

7

8                       **UNITED STATES DISTRICT COURT**

9                      **CENTRAL DISTRICT OF CALIFORNIA**

10

11   **SUSANNA GALADJIAN,**                )   NO. CV 04-3093-MAN
                                           )
12                      **Plaintiff,**      )
            **v.**                          )   MEMORANDUM OPINION AND ORDER
13                                          )
                                           )
14   **JO ANNE B. BARNHART,**               )
     **Commissioner of the**                )
15   **Social Security Administration,**    )
                                           )
16                      **Defendant.**      )
     _____)

17

18        Plaintiff filed a Complaint on May 7, 2004, seeking review of the

19   denial by the Social Security Commissioner ("Commissioner") of

20   Plaintiff's claim for supplemental security income benefits ("SSI").  On

21   June 10, 2004, the parties filed a "Consent to Proceed Before a United

22   States Magistrate Judge," pursuant to 28 U.S.C. § 636.  The parties

23   filed a Joint Stipulation on May 19, 2005, in which:  Plaintiff seeks an

24   order reversing the Commissioner's decision denying benefits and

25   remanding for the payment of benefits or, alternatively, for a new

26   hearing; and Defendant requests that the Commissioner's decision be

27   affirmed.  The Court has taken the parties' Joint Stipulation under

28   submission without oral argument.

## SUMMARY OF ADMINISTRATIVE PROCEEDINGS

Plaintiff filed an application for SSI on February 21, 1992. (Administrative Record ("A.R.") 81-84.) Plaintiff claims to have been disabled since May 1985, due to headaches, nervousness, depression, poor memory, and pain in her back, legs, arms, and hands. (A.R. 14, 81.) Plaintiff has past relevant work experience as a sewing machine operator. (A.R. 14.)

The Commissioner denied Plaintiff's claim for benefits initially and upon reconsideration. On February 1, 1995, Plaintiff, who was represented by an attorney, appeared and testified at a hearing before Administrative Law Judge ("ALJ") Richard Urbin. (A.R. 38-80.) In a May 26, 1995 decision, ALJ Urbin found that Plaintiff was not disabled, and the Appeals Council subsequently denied Plaintiff's request for review of that decision. (A.R. 13-22, 4-6.) Plaintiff sought review of that decision in this Court, and on November 9, 2000, the Honorable Consuelo B. Marshall remanded this case for further administrative proceedings after adopting the Report and Recommendation of the undersigned Magistrate Judge (the "2000 Order"). (A.R. 370-402.)

After Plaintiff's claim was remanded, ALJ Sally Reason held a hearing on November 5, 2001, regarding Plaintiff's claim. (A.R. 420-46.) In a December 12, 2001 written decision, ALJ Reason granted in part and denied in part Plaintiff's application for benefits. (A.R. 407-11.) Plaintiff submitted written exceptions to this decision. On April 21, 2004, the Appeals Council issued a written decision rejecting Plaintiff's further arguments and finding that Plaintiff was not

2

disabled based on her February 21, 1992 application.  (A.R. 240-43.)

### SUMMARY OF ADMINISTRATIVE DECISION

In her December 12, 2001 written decision, ALJ Reason found that Plaintiff had not engaged in substantial gainful activity since February 21, 1992.  (A.R. 410.)  She found that Plaintiff was a "younger individual" pursuant to 20 C.F.R. § 416.963 prior to March 23, 1993, and has a limited education pursuant to 20 C.F.R. § 416.964.  (*Id.*)  She found that Plaintiff has "severe" impairments, consisting of a history of carpal tunnel syndrome and major depression.  (*Id.*)  The ALJ found that Plaintiff had the residual functional capacity, prior to March 23, 1993, to perform a limited range of "medium unskilled exertional work."[1] (*Id.*)  The ALJ found that Plaintiff is not capable of performing her past relevant work as a lock stitch machine sewing machine operator. (*Id.*)  Relying upon the testimony of a vocational expert and using Rule 203.26 of the Medical-Vocational Guidelines (the "Grids") as a framework, the ALJ found that there were a significant number of jobs in the national economy that Plaintiff could have performed prior to March 23, 1993, such as a hand packer, usher, and store laborer.[2]  (*Id.*)

The ALJ further found that, following March 23, 1993, but not prior thereto, Plaintiff's mental impairments met the requirements of Section

---

[1]     "Medium work" involves "lifting no more than 50 pounds at a time with frequent lifting or carrying of objects weighing up to 25 pounds."  20 C.F.R. §§ 416.967(c); 404.1567(c).

[2]     Rule 203.26 directs that a person who is a "younger individual," has a "limited or less" education, and has "skilled" or "semi-skilled" past relevant work, is not disabled. 20 C.F.R. Pt. 220, App. 2.

12.04, Appendix 1, Subpart P, Regulations No. 4.[3]  (A.R. 411.)  Thus, the ALJ concluded that Plaintiff was not disabled prior to March 23, 1993, but has been under a "disability" since March 23, 1993.  (*Id.*)

In a notice dated December 16, 2003, the Appeals Council notified

---

[3]  According to Section 12.04 for affective disorders, the required level of severity for these disorders is met when the requirements in both A and B are satisfied, as follows:

A.  Medically documented persistence, either continuous or intermittent, of one of the following:

1. Depressive syndrome characterized by at least four of the following:  a. Anhedonia or pervasive loss of interest in almost all activities; b. Appetite disturbance with change in weight; c. Sleep disturbance; d. Psychomotor agitation or retardation; e. Decreased energy; f. Feelings of guilt or worthlessness; g. Difficulty concentrating or thinking; h. Thoughts of suicide; or i. Hallucinations, delusions or paranoid thinking; or

2. Manic syndrome characterized by at least three of the following:  a. Hyperactivity; b. Pressure of speech; c. Flight of ideas; d. Inflated self-esteem; e. Decreased need for sleep; f. Easy distractability; g. Involvement in activities that have a high probability of painful consequences which are not recognized; or h. Hallucinations, delusions or paranoid thinking; or

3. Bipolar syndrome with a history of episodic periods manifested by the full symptomatic picture of both manic and depressive syndromes (and currently characterized by either or both syndromes); AND

B. Resulting in at least two of the following:

1. Marked restriction of activities of daily living; or

2. Marked difficulties in maintaining social functioning; or

3. Deficiencies of concentration, persistence or pace resulting in frequent failure to complete tasks in a timely manner (in work settings or elsewhere); or

4. Repeated episodes of deterioration or decompensation in work or work-like settings which cause the individual to withdraw from that situation or to experience exacerbation of signs and symptoms (which may include deterioration of adaptive behaviors).

20 C.F.R. Pt. 220, App. 1.

4

Plaintiff and her representative that it was assuming jurisdiction of this case pursuant to 20 C.F.R. § 416.1484(b)(3), and proposed to issue a decision finding that Plaintiff was not eligible for benefits at any time on or before the date of the May 30, 1995 decision.  (A.R. 418-19.) Plaintiff submitted no written statement pursuant to such notice.  (A.R. 240.)

In a written decision dated April 21, 2004, the Appeals Council affirmed ALJ Reason's finding set forth in the December 12, 2001 written decision that Plaintiff could have performed a significant number of jobs from the date of her application through March 22, 1993.[4]  (A.R. 241.)  However, the Appeals Council declined to adopt the ALJ's finding that Plaintiff was disabled from March 22, 1993 through May 30, 1995. In particular, the Appeals Council disagreed with the her finding that, beginning on March 23, 1993, Plaintiff's mental impairment met the level of severity set forth in Section 12.04.  (*Id.*)

The Appeals Council considered Plaintiff's statements regarding her subjective complaints and found that "[Plaintiff] did not have a medically determined condition which could reasonably be expected to have produced the symptoms alleged."  (A.R. 242.)  The Appeals Council further considered the effects of Plaintiff's mental impairment and found, as follows:

The Council adopts the [ALJ's] conclusions regarding the

---

[4]    The Appeals Council noted that Plaintiff was found to be disabled pursuant to a January 12, 1999 application for SSI and eligible for SSI since February 1, 1999.  (A.R. 241.)

1    degree to which [Plaintiff's] mental impairment restricted

2    activities of daily living; presented difficulties in

3    maintaining social functioning; resulted in deficiencies in

4    concentration, persistence or pace; and produced episodes of

5    deterioration or decompensation in work or work-like settings,

6    prior to March 23, 1993.  Further, because there is no

7    evidence to demonstrate that [Plaintiff's] mental impairment

8    had worsened or changed in any way since March 22, 1993 and

9    through May 30, 1995, the Appeals [C]ouncil concludes that the

10   findings made up to March 22, 1993 continued to apply through

11   all times pertinent to this decision.

12

13   (A.R. 242.)

14

15   Thus, the Appeals Council adopted the ALJ's findings for the period

16   through March 22, 1993, and further found that such findings were

17   applicable to the entire period at issue, through the date of the

18   hearing decision issued on May 30, 1995.  (A.R. 242.)  Specifically, the

19   Appeals Council found that, as of May 30, 1995, Plaintiff:  was 50 years

20   old, which is defined as "closely approaching advanced age"; was unable

21   to communicate in English; and was "semiskilled."  (A.R. 242-43.)  In

22   addition, the Appeals Council found that Plaintiff was not able to

23   perform her past relevant work and did not have transferable work

24   skills.  (*Id.*)  However, using Rules 203.18 and 203.25 as a framework,

25   the Appeals Council found that there were a significant number of jobs

26   in the national economy that Plaintiff could have performed during the

27   time period at issue, such as kitchen helper, dining room attendant, and

28

cleaner.[5]  (A.R. 243.)  Therefore, the Appeals Council concluded that Plaintiff was not eligible for benefits for any time period based upon her application filed on February 21, 1992.  (*Id.*)

**STANDARD OF REVIEW**

This Court reviews the Commissioner's decision to determine whether it is free from legal error and supported by substantial evidence.  Smolen v. Chater, 80 F.3d 1273, 1279 (9th Cir. 1996).  The Commissioner's decision must stand if it is supported by substantial evidence and applies the appropriate legal standards.  Saelee v. Chater, 94 F.3d 520, 521 (9th Cir. 1996).  Substantial evidence is "more than a mere scintilla but less than a preponderance -- it is such relevant evidence that a reasonable mind might accept as adequate to support the conclusion."  Moncada v. Chater, 60 F.3d 521, 523 (9th Cir. 1995).

Although this Court cannot substitute its discretion for that of the Commissioner, this Court nonetheless must review the record as a whole, "weighing both the evidence that supports and the evidence that detracts from the [Commissioner's] conclusion."  Desrosiers v. Secretary of Health and Human Serv., 846 F.2d 573, 576 (9th Cir. 1988); *see also* Jones v. Heckler, 760 F.2d 993, 995 (9th Cir. 1985).  "The ALJ is responsible for determining credibility, resolving conflicts in medical testimony, and for resolving ambiguities."  Andrews v. Shalala, 53 F.3d

---

[5]  Rule 203.18 directs that a claimant who is "closely approaching advanced age," with a "limited or less education," and with "unskilled" or no past relevant work, is not disabled.  Rule 203.25 directs that a claimant who is a "younger individual," with a "limited or less" education, and with "unskilled" or no past relevant work, is not disabled.  20 C.F.R Pt. 220, App. 1.

1035, 1039-40 (9th Cir. 1995).   This Court must uphold the
Commissioner's decision if it is supported by substantial evidence and
free from legal error, even when the record reasonably supports more
than one rational interpretation of the evidence.   *Id*. at 1041; *see also*
Morgan v. Commissioner of the Social Security Administration, 169 F.3d
595, 599 (9th Cir. 1999); Flaten v. Secretary, 44 F.3d 1453, 1457 (9th
Cir. 1995).

**DISCUSSION**

Plaintiff alleges three disputed issues.   First, Plaintiff contends
that Defendant failed to fairly and accurately assess the medical and
other relevant evidence.   Second, Plaintiff contends that Defendant
improperly failed to provide a credibility finding.   Third, Plaintiff
contends that the ALJ's hypothetical questions to the vocational expert
were improper, in that they did not accurately describe her limitations.
(Joint Stip. at 11.)

In the 2000 Order, the Court remanded the case on one ground only:
ALJ Urbin erred in failing to provide an adequate explanation or
findings supporting his adoption of the residual functional capacity
assessment provided by Dr. Jabat, a nonexamining consultant, instead of
the opinion provided by Dr. Schatz, an examining consultant.   In
explaining its instructions to the ALJ on remand, the Court specifically
stated:

In his decision in this case, the ALJ adopted the
hypothetical based on the RFC assessment of Dr. Jabat, a

8

nonexamining consultant, rather than the hypothetical based on the RFC provided by Dr. Schatz, an examining consultant. (A.R. 17.)   In so choosing, the ALJ described the RFC assessment of Dr. Jabat as "generally consistent with the assessment given by Dr. Schatz." (A.R. 17.)   However, the differences between the two assessments were sufficiently significant to change the VE's opinion from a conclusion that plaintiff would be unable to work at any available jobs to a conclusion that jobs were available for someone with her level of functioning and vocational profile.

It is acceptable for the ALJ to rely on the opinion of a nontreating nonexamining medical consultant over the opinion of an examining doctor, but the ALJ must set forth specific reasons for rejecting the opinions of the examining doctor that are supported by substantial evidence in the record. Andrews v. Shalala, 53 F.3d 1035, 1041-42 (9th Cir. 1995).   As long as the opinions of the nonexamining consultant are supported by other evidence in the record, the report of the nonexamining doctor may serve as substantial evidence. Saelee v. Chater, 94 F.3d 520, 522 (9th Cir. 1996)(holding that the ALJ's primary reliance on the findings of a medical consultant was not an abuse of discretion); Jamerson v. Chater, 112 F.3d 1064 (9th Cir. 1997)(reports of the nonexamining advisor need not be discounted and may serve as substantial evidence when they are supported by other evidence in the record and are consistent with it).

1    Here, the ALJ found that the RFC of Dr. Jabat was
2    generally consistent with that of Dr. Schatz. (A.R. 17.) In
3    addition, another examining doctor, Dr. Fabella, found
4    plaintiff to have good mobility and normal spinal motion and
5    opined that plaintiff was "able to move about, handle objects
6    and perform basic activities of daily living." (A.R. 176.)
7    Consequently, there is medical evidence in the record to
8    support the conclusion that plaintiff was capable of
9    performing within the RFC assessed by Dr. Jabat, but the ALJ
10   failed to provide any findings to support his decision to
11   utilize Dr. Jabat's opinion over that of an examining
12   physician, Dr. Schatz. Because the ALJ failed to provide an
13   explanation for his choice, this Court is unable to determine
14   whether the basis for the ALJ's decision is valid. Therefore,
15   remand for further administrative proceedings is appropriate.

16

17   (A.R. 394-95.)

18

19   **A.    There Was No Error Based On The Commissioner's Finding Regarding**
20          **Plaintiff's Physical Residual Functional Capacity, Based On Dr.**
21          **Jabat's Opinion, Or Based On The Hypothetical To The Vocational**
22          **Expert.**

23

24          In discussing the basis for Plaintiff's physical residual
25   functional capacity finding, the Appeals Council stated:

26

27          The record shows that medical evidence during the period at
28          issue, [Plaintiff] had a history of carpal tunnel syndrome

10

which could reasonably have been expected to preclude work requiring repetitive fine hand movement, as expressed by the medical expert who testified at the November 5, 2001 hearing. This was the opinion of Dr. Jabat, a nonexamining consultant who evaluated the record that was available for the May 30, 1995 hearing decision.   This opinion was supported by the reports from Dr. Schatz, an examining consultant who had provided a similar assessment, except that Dr. Schatz found that [Plaintiff] could stand and walk for four to six hours in an eight hour day which would arguably limit [Plaintiff] to sedentary work, in which case the manipulative limitations described would preclude all work.   However, Dr. Fabella, another examining doctor, had reported [that] he found [Plaintiff] to have good mobility and normal spinal motion and concluded with an opinion that [Plaintiff] was "able to move about, handle objects and perform basic activities of daily living."   Consequently, there is medical evidence in the record to support the conclusion that [Plaintiff] was capable of performing work within the residual functional capacity assessed by Dr. Jabat (Exhibit AC-4, page 24).   This in turn would have allowed for the performance of the jobs cited by the vocational expert at that hearing.

(A.R. 241-42.)

Plaintiff contends that the Appeals Council improperly concluded that Dr. Jabat's opinion was supported by the reports of Dr. Gabriel Fabella and Dr. Robert Schatz, two physicians who examined Plaintiff at

1 the request of the Commissioner.  (Joint Stip. at 12.)  Plaintiff

2 further contends that substantial evidence does not support the opinions

3 of Dr. Jabat or Dr. Fabella regarding her physical residual functional

4 capacity.  (*Id.* at 13.)  In addition, Plaintiff contends that the

5 hypothetical question posed to the vocational expert was incomplete, in

6 that it did not include all of her limitations.  (*Id.* at 40-42.)

7

8      The Court concludes that the Appeals Council provided sufficient

9 reasons for adopting the physical residual functional capacity finding

10 found by Dr. Jabat.  As directed by the 2000 Order, the Appeals Council

11 properly set forth the reasons why Dr. Jabat's opinion was consistent

12 with other evidence in the record, specifically the opinion of Dr.

13 Fabella, and some of the findings set forth in Dr. Schatz's opinion.

14 Therefore, the Appeals Council's finding regarding Plaintiff's residual

15 functional capacity assessment, based on Dr. Jabat's opinion, is

16 supported by substantial evidence.  *See* Morgan v. Commissioner of Soc.

17 Sec. Admin., 169 F.3d 595, 600 (9th Cir. 1999)(medical expert opinions

18 may serve as substantial evidence when "they are supported by other

19 evidence in the records and are consistent with it").  Furthermore, the

20 Appeals Council properly found that Plaintiff could have performed a

21 significant number of jobs in the national economy, including kitchen

22 helper, dining room attendant, and cleaner.  This finding is based on

23 the testimony of the vocational expert at the February 1, 1995 hearing

24 in response to a hypothetical question asking what work a person could

25 perform with "this claimant's age, education, and work background" and

26 with Dr. Jabat's residual functional capacity assessment.  (A.R. 75-76.)

27 *See* Embrey v. Bowen, 849 F.2d 418, 422-23 (9th Cir. 1988)(hypothetical

28 question posed to a vocational expert is proper when it reflects all of

the claimant's limitations).

Accordingly, Plaintiff's arguments that the Appeals Council improperly based her physical residual finding on Dr. Jabat's opinion and that there was no proper hypothetical question posed to a vocational expert are unavailing.

**B.    Relief Is Not Available Based On The Errors Alleged By Plaintiff Which Stem From Issues That The Court Rejected In The 2000 Order.**

Plaintiff alleges numerous errors committed by the ALJ and Appeals Council on remand, which stem from issues which were previously addressed and rejected in the Court's 2000 Order, *to wit*, whether the ALJ and Appeals Council provided specific, legitimate reasons for rejecting the opinions of Dr. John Ter-Zakarian and Dr. Hartyoun Yousif, Plaintiff's treating doctors (Joint Stip. at 12-20); whether the ALJ and the Appeals Council improperly failed to set forth a credibility finding (Joint Stip. at 37-38, 39-40); and whether the ALJ and the Appeals Council improperly rejected the opinions of Dr. George Bixler, a physician whose opinions regarding Plaintiff's mental limitations were relied upon by Dr. Nicholas Bercel, the medical expert who testified at the November 5, 2001 hearing (Joint Stip. at 16-19).

In addressing the scope of issues to be addressed by an ALJ on remand, the United States Supreme Court explained:

Where a court finds that the Secretary has committed a legal
or factual error in evaluating a particular claim, the

13

district court's remand order will often include detailed instructions concerning the scope of the remand, the evidence to be adduced, and the legal or factual issues to be addressed. *See, e.g., Cooper v. Bowen*, 815 F.2d 557, 561 (C.A. 9, 1987). Often, complex legal issues are involved, including classification of the claimant's alleged disability or his or her prior work experience within the Secretary's guidelines or "grids" used for determining claimant disability. See*, e.g., Cole v. Secretary of Health and Human Services*, 820 F.2d 768, 772-73 (C.A. 6, 1987). **Deviation from the court's remand order in the subsequent administrative proceedings is itself legal error, subject to reversal on further judicial review**. See, *e.g.,* Hooper v. Heckler, 752 F.2d 83, 88 (C.A. 4, 1985); *Medford v. Gardner*, 383 F.2d 748, 758-59 (C.A. 6, 1967).

Sullivan v. Hudson, 490 U.S. 877, 885-86, 109 S. Ct. 2248, 2254-55 (1989)(emphasis added). As set forth above, the 2000 Order directed the Commissioner, on remand, to provide reasons for adopting the residual functional capacity finding set forth by Dr. Jabat, if the Commissioner determined, upon reconsideration, that such reasons existed and were adequate and appropriate. On remand, the Commissioner was confined to addressing only that issue.

In addition, under the the "law of the case" doctrine, "'the decision of an appellate court on a legal issue must be followed in all subsequent proceedings in the same case.'" Pearson v. Chater, 1997 WL 314380, *3 (N.D. Cal. Feb. 20, 1997)(*quoting* Herrington v. County of

14

_Sonoma_, 12 F.3d 901, 904 (9th Cir. 1993)).  "'Although the observance of the doctrine is considered discretionary, [the Ninth Circuit] has ruled that the prior decision should be followed unless:  1) the decision is clearly erroneous and its enforcement would work a manifest injustice, 2) intervening controlling authority makes reconsideration appropriate, or 3) substantially different evidence was adduced at a subsequent trial.'"  _Pearson_, 1997 WL 314380, *3 (_quoting_ _In re Rainbow Magazine, Inc._, 77 F.3d 278, 281 (9th Cir. 1996)); _see also_ _Mendenhall v. National Trans. Safety Bd._, 213 F.3d 464, 469 (9th Cir. 2000).  _See also_ Samuels, B., Social Security Disability Claims: Practice and Procedure, § 19:78 (2d ed. 1994, updated as of 2006)(the law of the case doctrine directs that "the Commissioner is bound on remand from a Federal Court by the scope of the court's mandate.  Thus, law of the case doctrine prevents relitigation of settled issues in a case and requires courts and administrative agencies to adhere to decisions made in earlier proceedings"; citations omitted).

    As set forth above, the ALJ and the Appeals Council complied with the 2000 Order on remand by correcting the sole error found by the 2000 Order, namely, the need to more adequately support the adoption of Dr. Jabat's residual functional capacity assessment.  In the Joint Stipulation, Plaintiff merely asserts, without more, that "manifest injustice" would result if the Court were to affirm the adoption of Dr. Jabat's residual functional capacity finding, because "the record clearly reflects that Dr. Jabat's opinion is not supported by substantial evidence on the record as a whole."  (Joint Stip. at 34.) However, the Court previously addressed the basis of Plaintiff's assertion of "manifest injustice" in the 2000 Order, in which the Court

15

noted that "there is medical evidence in the record to support the conclusion that plaintiff was capable of performing within the RFC assessed by Dr. Jabat." (A.R. 395.)  Accordingly, Plaintiff's assertion of "manifest injustice" is unfounded.

Plaintiff's remaining arguments -- that the ALJ and the Appeals Council erred by failing to consider other issues, which are outside the scope of the 2000 Order and already were addressed and rejected by the Court in the previous proceedings -- are unavailing.  In the 2000 Order, the Court found that the ALJ properly rejected the opinions of Dr. Ter-Zakarian (A.R. 381-85), Dr. Yousif (A.R. 386-87), and Dr. Bixler (A.R. 387-89), as well as Plaintiff's subjective complaints (A.R. 390-93).  Plaintiff did not appeal.  The "law of the case" doctrine precludes re-litigation of these issues. *See* <u>Ruiz v. Apfel</u>, 24 F. Supp. 2d 1045, 1050 (C.D. Cal. 1998)(ALJ complied with the remand order directing the ALJ to set forth detailed credibility findings, but erred by reviewing and re-deciding an issue at step four that previously had been decided in the claimant's favor but not appealed); <u>Pearson</u>, 1997 WL 314380, *3 (ALJ properly rejected physician's testimony on remand because physician did not present any substantially different evidence at the second hearing and district court noted that, under the law of the case doctrine, it "would not re-examine its legal decision that the ALJ had sufficient reasons to discount [that physician's] testimony.") Furthermore, Plaintiff fails to set forth any valid reason for not following the "law of the case" doctrine regarding these or any other alleged errors, as set forth below.

///

///

1.    **Physicians' Opinions Pertaining To Plaintiff's Mental Limitations**

At the November 5, 2001 administrative hearing following remand of this case, ALJ Reason elicited testimony from Dr. Nicholas Bercel, a non-examining medical expert.  Dr. Bercel adopted the opinion of "Dr. Decompatus," who diagnosed Plaintiff with major depressive disorder, chronic, and found that Plaintiff had functional limitations of "difficulties with daily living, slight; social adjustment, marked and difficulty with concentration, frequent."[6]  (A.R. 430.)  Dr. Bercel found that the requirements of Section 12.04 were met.  (*Id.*)

When the ALJ asked Dr. Bercel when Plaintiff became so limited, Dr. Bercel testified that:

> [I]n '93, 8/22/93, [Dr. Bixler] made a diagnosis of depressive condition with psychosis and put her on Triavil, which at that time, was the only available -- well, not the best, was an antidepressant.  She had bad moods, hallucinations, poor concentrations, memory problems and she hallucinated.  She had

_____

[6]    The identity of this physician is unclear based on the Court's review of the record.  The most analogous opinion is from Dr. Carlos Perioni, a psychiatrist who examined Plaintiff in connection with her claim, and diagnosed Plaintiff with "Major Depressive Disorder, Moderate, Chronic," and noted that Plaintiff: "cannot perform detailed and complex tasks because of her depressive manifestations"; "[has] impaired memory and concentration [that] may affect persistence and reliability [and] . . . her ability to understand instructions"; "[has] [s]ocial withdrawal tendencies and depression [that] may affect her ability to relate to others"; and "is not able to handle her own funds appropriately."  (A.R. 343-44.)  In any event, the Court does not address the propriety of Dr. Perioni's findings, as Plaintiff raises no issue regarding such findings.

1    the delusion that somebody's beating her up.  Evidently, she
2    has improved, because other psychiatrists merely made a
3    diagnosis of clinical depression, anxiety, stress and such.
4    So that whether it was a continuous condition is not as clear
5    as that she had that condition in - way back in '93.

7  (A.R. 430.)  Dr. Bercel agreed that Plaintiff met the requirements of
8  Section 12.04 on the date of Dr. Bixler's report; Dr. Bercel further
9  testified that he did not find any records to support more than the
10 physical limitations resulting from Plaintiff's carpal tunnel condition
11 that would have impacted her residual functional capacity prior to that
12 date.  (A.R. 430-31.)  When questioned by Plaintiff's attorney, Dr.
13 Bercel stated that he considered and agreed with the diagnoses set forth
14 in psychological reports by Drs. Isadore Wendell, Ter-Zakarian, and
15 Yousif that Plaintiff suffered from depression (A.R. 433); however, he
16 did not indicated whether he considered the opinions of Dr. Nguyen or
17 Dr. Nikopoulous and, if so, why he discredited them (A.R. 428-34,
18 *passim*.)

20    In addressing ALJ Reason's December 20, 2001 finding that
21 Plaintiff's mental residual functional capacity met the requirements of
22 Section 12.04 as of March 22, 1993, based on Dr. Bercel's testimony, the
23 Appeals Council stated:

25    With respect to [Plaintiff's] mental impairment prior to the
26    May 30, 1995 hearing decision, Dr. Nguyen on June 20, 1992 and
27    Dr. Nikopoulous on April 8, 1993 reported having found no
28    evidence of psychiatric impairments (See Exhibit AC-4, page

18

4). More significantly, the report from Dr. Bixler, on the basis of which the current decision finds that [Plaintiff] was disabled since March 23, 1993, does not provide a sufficient evidence to establish the severity found in the current decision. Although the decision indicates that the report is dated March 23, 1993 (Current decision at bottom of page 2), the report is actually dated March 22, 1993 and was for a visit on March 19, 1993 (See record at Tr. 181-183). That report indicates that [Plaintiff] had been seen for the first time on October 8, 1992, but there are no progress notes or other treatment records to establish that he saw [Plaintiff] with any frequency or at any other time besides that last visit on March 19, 1993. Further, Dr. Bixler's mental status findings are extremely limited, radically different from the two other consultative examiners and, clearly based for the most part on [Plaintiff's] subjective complaints and her own recitation of her medical and social history. Because of this the May 30, 1995 hearing decision properly rejected Dr. Bixler's opinion. Such was the opinion of the district court amended report and recommendation (Exhibit AC-4 at pages 16-18). There has been no new evidence from Dr. Bixler to provide support for the opinion stated in March 1993 and, therefore, no basis for granting this document controlling weight at this time.

(A.R. 242.)  Here, in view of the 2000 Order affirming ALJ Urbin's rejection of Dr. Bixler's opinion in the May 26, 1995 written decision, it was error for ALJ Reason to adopt Dr. Bercel's opinion that Plaintiff

was disabled under Section 12.04, as Dr. Bercel's opinion was based on Dr. Bixler's discredited opinion.   Accordingly, the Appeals Council's reversal of the ALJ's finding on this ground was proper.

Plaintiff further contends that the opinions of Dr. Nguyen and Dr. Nikopoulous do not constitute substantial evidence regarding her mental limitations.   (Joint Stip. at 17.)   In the 2000 Order, the Court cited the opinions of both Dr. Nguyen and Dr. Nikopoulous, who each found no evidence of a psychiatric impairment.   (A.R. 389.)   Both Dr. Nguyen and Dr. Nikopoulous performed mental status examinations, and their opinions are based on their own independent, clinical evaluations.   Accordingly, their opinions constitute substantial evidence regarding Plaintiff's mental residual functional capacity.   *See, e.g.,* <u>Tonapetyan v. Halter</u>, 242 F.3d 1144, 1149 (9th Cir. 2001)(consultative examiner's opinion on its own constituted substantial evidence, because it rested on independent examination of claimant); <u>Morgan v. Commissioner of Soc. Sec. Admin.</u>, 169 F.3d 595, 600 (9th Cir. 1999)(testifying medical expert opinions may serve as substantial evidence when "they are supported by other evidence in the records and are consistent with it").   Plaintiff's arguments regarding the alleged errors in the findings pertaining to her mental limitations, therefore, are rejected.

## 2.   **Credibility**

Plaintiff is incorrect that there was no credibility finding by the ALJ on remand.   However, while the ALJ did not address Plaintiff's credibility in her December 12, 2001 written decision, the Appeals Council considered and rejected Plaintiff's credibility.   (A.R. 242.)

Moreover, Plaintiff points to no "new" allegations or testimony regarding her limitations that the Appeals Council improperly rejected. Indeed, Plaintiff did not testify at the November 5, 2001 hearing on remand. (A.R. 421-22.) Like the findings pertaining to the rejection of the opinions of Plaintiff's treating physicians, the ALJ correctly found that Plaintiff's allegations were not credible in his May 26, 1995 written decision, as the Court explained in the 2000 Order. Thus, Plaintiff's arguments with respect to her credibility are unavailing.

### 3. Obesity

In the Joint Stipulation, Plaintiff claims, for the first time, that the ALJ failed to properly evaluate the effects of her obesity on her physical residual functional capacity. Plaintiff bases her argument on the June 19, 1992 report of Dr. Fabella and the March 31, 1993 report of Dr. Schatz.[7] (Joint Stip. at 20.) However, although such evidence was before the Court prior to the ALJ's May 26, 1995 written decision and the Court's 2000 Order, Plaintiff failed to raise any issue regarding her obesity until her present appeal before this Court. Certainly, if Plaintiff, who was represented by counsel, had wanted to claim obesity as a basis for her disability, she should have raised such claims at or before the 1995 hearing, not waiting for ten years to do so through the present Joint Stipulation. *See* Meanel v. Apfel, 172 F.3d

---

[7] In Dr. Fabella's June 19, 1992 report, he noted Plaintiff's weight and described her as a "well-developed but obese young female, in no apparent distress." (A.R. 173.) Dr. Fabella found no limitations arising from Plaintiff's obesity. (A.R. 176.) In Dr. Schatz's March 31, 1993 report, he noted Plaintiff's weight and described her as a "48 year-old female, obese, and a vague and suboptimal historian." (A.R. 187.) Like Fabella, Dr. Schatz found no limitations arising from Plaintiff's obesity. (A.R. 187.)

1111, 1115 (9th Cir. 1999)(holding that claimants who are represented by counsel must raise issues at their administrative hearings in order to preserve them for appeal to the federal courts).  Furthermore, as noted above, the Appeals Council relied on the opinion of Dr. Fabella and the opinion of Dr. Schatz, to the extent that his opinion was consistent with Dr. Jabat's opinion.  (A.R. 241-42.)  Even if the opinions of Drs. Fabella and Schatz had not been considered, there would be no error, as neither Dr. Fabella nor Dr. Schatz found any limitation resulting from Plaintiff's obesity.  (A.R. 176, 187.)  The Appeals Council, therefore, appropriately considered the evidence regarding Plaintiff's physical condition, including her obesity, in determining her residual functional capacity.  Accordingly, Plaintiff's arguments pertaining to her obesity are rejected.

For the above reasons, the remaining arguments that Plaintiff alleges in the Joint Stipulation regarding alleged errors that exceed the scope of the 2000 Order or were previously addressed by the Court are unavailing.

**CONCLUSION**

Accordingly, for the reasons stated above, the Commissioner's decision denying benefits is AFFIRMED, consistent with this Memorandum Opinion and Order.  Judgment shall be entered affirming the decision of the Commissioner, consistent with this Memorandum Opinion and Order.

IT IS FURTHER ORDERED that the Clerk of the Court shall serve copies of this Memorandum Opinion and Order and the Judgment on counsel

22

1   for Plaintiff and for Defendant.

2

3        **LET JUDGMENT BE ENTERED ACCORDINGLY.**

4

5   DATED: March 29, 2006

6                                          _____/s/_____
                                           MARGARET A. NAGLE
7                                   UNITED STATES MAGISTRATE JUDGE

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28